IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **MICHAEL J. BRADFORD,** | ) | No. 1:06-CV-01214 AWI GSA |
| | ) | |
| **Plaintiff,** | ) | **PRETRIAL ORDER** |
| | ) | |
| **v.** | ) | **Telephonic Trial Confirmation:** |
| | ) | **October 5, 2009** |
| **CITY OF MODESTO, et al.,** | ) | **3:00 p.m.** |
| | ) | |
| **Defendants.** | ) | **Motions In Limine Hearing and** |
| | ) | **Trial:** |
| | | **October 20, 2009** |
| | | **8:30 a.m., Courtroom 2** |

**RULES OF CONDUCT**

The pretrial conference was held on September 8, 2009.  The trial in this matter is set for October 20, 2009.  The parties currently estimate that the trial shall take four to six days.

**I.  Jurisdiction and Venue**

The court has federal question subject matter jurisdiction over this federal civil rights action pursuant to 28 U.S.C. §1331.  Venue is proper because the conduct allegedly occurred in this judicial district.

**II.  Jury Trial**

Plaintiff has requested a jury trial.  This action shall be tried by a jury of eight.

### III.  Facts

Plaintiff and Defendants have strikingly different proposed undisputed facts.  Their assertions are reproduced in the sections below.

From what the court can gather, both side present the facts as follows.  The relevant incident happened on June 29, 2004.  Plaintiff was in a house in Riverbank, speaking with a confidential informant who was wearing a wire; the police were monitoring the conversation.  Plaintiff stated that he was not armed at that time.  The parties dispute whether Plaintiff stated that he would arm himself in the near future.  Plaintiff then left as a passenger in a car.  Defendants and other police officers tried to pull the car over to arrest Plaintiff.  He evaded the police by exiting the car and running through a number of backyard in a residential neighborhood.  Defendants entered the yard in which Plaintiff was hiding.  Defendant Hart saw Plaintiff and ordered him to show his hands.  The parties dispute whether Plaintiff was standing or lying on the ground when Defendant Hart confronted Plaintiff.  The parties dispute whether Plaintiff directly complied or whether he reached toward his waistband.  The parties dispute whether Defendant Hart warned Plaintiff not to do it in reference to reaching toward his waistband.  Defendants fired a number of times at Plaintiff.  He was shot once and fell to the ground.  Defendants approached Plaintiff behind a shield and arrested him.

### A.  Plaintiff's Undisputed Facts

On June 29, 2004, Plaintiff was being investigated by the Modesto Police Department for a crime for which he had not been found guilty.  The incident from which this occurred was on the above mentioned date when Plaintiff left the residence at 6113 Falcon Ridge Way, Riverbank, California to go to his girlfriend's house.  The officers had a confidential informant inside of the residence from which Plaintiff left.  This informant informed the officers that

2

Plaintiff was not armed and also the officers heard the Plaintiff himself state he was unarmed. However, the officers stated that they felt the need to go ahead and stop the vehicle Plaintiff was riding in, which lead to a short pursuit. At one point Plaintiff opened the door and jumped out running through yards and jumping over fences. When Plaintiff made it to the back yard of 1836 Fairfax Ave., he stopped and lay down. A few minutes later he heard someone yell, "let me see your hands." As Plaintiff started to get up and attempt to comply with the order and raise his hands, the officers started shooting an unknown number of times. To the best of Plaintiff's knowledge, it was around three to five shots. Plaintiff was struck with a bullet to his left chest area and fell to the ground in great pain. Plaintiff was tremendously surprised that he had been shot for no reason. While on the ground Plaintiff heard someone yell again, "let me see your hands." Plaintiff was in fear of being killed, so he lifted his right hand up in an attempt to once again, comply with the order. (Plaintiff would point out to the court that he could not lift his left hand from being shot and yelled to the officers that he had been shot.) As Plaintiff was trying to comply, he was surprised again by more shots being fired by the officers. This time it sounded like approximately 30 to 40 more shots. Plaintiff then realized their goal was to kill him so he just lay there until the officers ran up with a shield that they slammed on his chest. Another officer put his boot on Plaintiff's face while they yanked his hands up and handcuffed him. Once again Plaintiff felt pain shoot through the left side of his body. After this happened, in what seemed to be an attempt to embarrass Plaintiff, the officers pulled down Plaintiff's pants and underwear, then dragged him by his arms from the backyard to the street. Plaintiff received a very large wound on his lower back as a result of this incident. Once Plaintiff reached the street, an officer whom he will identify stood over him and slapped him in the face and said, "Pelon, you went out like a Bitch." It was at that moment it became perfectly clear to Plaintiff what had actually happened. These officers had purposely tried to murder Plaintiff. They were making good on their threats. They had fired shots 45 times into an area only about eight feet wide. Plaintiff did not threaten the officers in any way, nor did Plaintiff have any kind of weapon on his

3

person or anywhere near him.  As stated before, the officers even admitted they heard Plaintiff

say he was unarmed.  This was a blatant attempt to kill Plaintiff, which was only deterred by the

fact that 44 of the 45 shots missed Plaintiff.

### B.  Defendant's Undisputed Facts

1. Modesto Police Department Officers Robert Hart, Dave Ramirez, and Carlos Ramirez were, at

all times relevant to this action, duly appointed and acting officers of the Modesto Police

department.

2. Modesto Police Department Officers Robert Hart, Dave Ramirez, and Carlos Ramirez were, at

all times relevant to this action acting within the course and scope of their employment.

3. The City of Modesto is, and, at all times relevant to this action was, duly organized under the

laws of the State of California and situated in the County of Stanislaus, California.

4. Modesto Police Department Officers Robert Hart, Dave Ramirez, and Carlos Ramirez were, at

all times relevant to this action, employees of the City of Modesto.

5. On June 29, 2004, plaintiff, Michael J. Bradford was a wanted parolee and was a suspect in

seven (7) recent armed robberies and a separate assault with a firearm.

6. On that evening, officers of the Modesto Police Department conducted a surveillance of a

location at which plaintiff Bradford met with a confidential informant whom was wearing an

electronic monitoring device which allowed them to hear and record statements by Plaintiff

Bradford that he went about on the street armed with a firearm, that he was not armed at that

moment, that he was the perpetrator of the armed robberies which were then under investigation,

and that he intended to commit another armed robbery on the night of this conversation, using his "beanie" and his "strap," which were street slang for the distinctive cap which the robbery suspect wore in the crimes under investigation, and for a handgun.

7. As this information was received by the surveillance team, the information was broadcast to officers surrounding the home, including the defendant officers.

8. At the conclusion of the monitored conversation with the confidential informant, Plaintiff Bradford left the residence where the meeting had taken place as a passenger in a vehicle driven by an accomplice.

9. At that time, the investigating officers believed that, based upon his statement during the monitored conversation, Mr. Bradford was then about to make good on his stated plan of committing another robbery.

10. Based upon the information then available to the investigative team, the decision was made to arrest Mr. Bradford immediately, so as to prevent yet another armed robbery.

11. It was then the investigating officers' belief that, if Mr. Bradford had, indeed, been unarmed while inside the residence during his conversation with the confidential informant, he would have armed himself once he entered the car and left to do the planned robbery.

12. The information which was available to them led the officers who would be participating in this arrest effort, to believe that they were engaged in an effort to apprehend an armed and dangerous felon, since this was a situation which involved the arrest of a self-proclaimed armed man who was a wanted felon and who had stated that he planned to violently resist arrest.

13. Consequently, the officers were in a heightened state of alert to the danger of armed violence by the suspect in effecting this arrest.

14. Officers attempted to stop the vehicle and a short pursuit followed.

15. At that point in time, Mr. Bradford and his driver/accomplice were actively resisting the law enforcement attempt to effect the arrest of Mr. Bradford, and the danger to the arresting officers which was posed by the unfolding situation was further escalated.

16. Rather than submit to arrest at the termination of the vehicle pursuit, Plaintiff Bradford ran from the vehicle and eluded officers as he jumped a fence into a nearby residential property.

17. This continued resistance to arrest by a man who was believed to be an armed and wanted felon, coupled with the fact that he now had a tactical advantage (due to the fact that he was now concealed within a residential neighborhood in low light nighttime conditions), escalated the danger for the officers trying to capture him to extreme heights.

18. Officers established a perimeter in an attempt to secure the neighborhood and the officers formed two teams and began a yard-to-yard search for Mr. Bradford.

19. Defendant Officer Hart was the K-9 officer who was assigned to one of those teams, to which defendant Officers D. Ramirez and C. Ramirez also belonged.

20. In advance of the entry of the team's officers into each yard which was about to be searched, Officer Hart made a loud announcement which informed anyone in the yard that the police were about to enter, and that a police dog would be released into the yard.  This announcement was

made for the purpose of warning anyone inside the yard, in order to allow any such person to identify himself and surrender, so as not to be bitten by the dog upon its release. When that announcement was made into the yard where Mr. Bradford was found, he did not respond.

21. Officer Hart's dog was sent into the yard to search it, and a few moments after he went out of sight around the rear corner of the house, he returned without having alerted.  The search team then entered the yard and commenced to search it.

22. There was a free-standing shed in the rear corner of the back yard, and Officer Hart and part of the team went to clear the shed and the area behind it.  After "clearing" the area between the shed and the fence, Officer Hart turned away from that area, at which time he saw Mr. Bradford standing near the fence at the front end of the backyard.  It appeared that he was preparing to jump over the fence into the next yard.

23. Mr. Bradford looked at Officer Hart, and, at that moment, Hart could see both of his hands, which were empty.  Rather than either jump the fence or surrender, he stood looking at Officer Hart, and then, after a momentary delay, he brought one of his hands to his waistband in a motion which appeared to Officer Hart to be a reach for a handgun.

24. Officer Hart repeatedly ordered Mr. Bradford to show his hands, and he did not comply. Based upon the way in which Mr. Bradford was looking at him, and because he thought that Bradford was about to draw a weapon from his waistband, instead of complying with his order to show his hands, Officer Hart told him "don't do it" a couple of times.

25. Officer Carlos Ramirez, having seen Mr. Bradford after Officer Hart initially called out, moved toward Officer Hart's position, and began to repeatedly order Bradford to show his hands

and get onto the ground.

26. Immediately prior to the firing of any firearm by any defendant officer there were two popping sounds heard which sounded like gunshots.

27. Believing that plaintiff Bradford was in the act of drawing a firearm and firing on him, Officer Hart fired his handgun at Bradford twice.

28. Officer Carlos Ramirez heard gunshots, and believing that Bradford was firing on him and Officer Hart, he fired his rifle at Mr. Bradford in a short burst.

29. Officer Carlos Ramirez heard more gunshots, then, as he was moving to reposition himself, he lost his footing and fell to the ground.

30. Officer Hart observed Officer Carlos Ramirez fall to the ground, and believing that Officer Ramirez had been shot by Mr. Bradford, Officer Hart fired his handgun in the direction of Mr. Bradford again, intending to provide cover fire for other officers whom he expected would be moving forward to rescue Officer Ramirez.

31. Because he believed that Mr. Bradford was engaging officers in a firefight, Officer Carlos Ramirez fired his rifle in Bradford's direction from the supine position as he attempted to scoot to a position of cover.

32. After seeing Officer Carlos Ramirez take a step backward and fall to the ground, Officer David Ramirez believed that Carlos Ramirez had been shot by Bradford, and that Bradford was making good on his boast that he's fight it out with arresting officers.  He then moved out into

the open in order to try to grab Carlos Ramirez in order to drag him to safety.  As he did so, he saw Bradford squatting down behind some kind of object, as if to take cover behind it.  He raised his duty sidearm and fired on Bradford in order to get his head down, so that he could try to extract Carlos Ramirez from the "kill zone."

33. Officer David Ramirez heard some other gunfire and thought that some or all of it might be coming from Bradford.  As a result, he pulled back momentarily, then re-entered the "kill zone," in another attempt to extract Carlos.  As he did so, he fired two more rounds in Bradford's direction.  As this was going on, Officers Freudenthal and David Ramirez collided with one another, and Carlos was able to crawl out of the "kill zone" on his own.

34. Once Carlos Ramirez was out of the "kill zone," all officers pulled back from the corner of the house and waited until a shield was brought into the back yard.  Mr. Bradshaw said that he had been shot, and, once the shield was brought in, officers used it to facilitate and approach to where Mr. Bradford had fallen to the ground.  At that point, Bradford was taken into custody.  No shots were fired during that activity.

35. Plaintiff Bradford was struck in the left shoulder area by one bullet in this incident.

### C.  Disputed Facts

1. What, if anything, plaintiff Bradford did in response to the words spoken to him by the officers who contacted him in the back yard.

2. Whether, at the time that each defendant officer made the decision to shoot, he reasonably believed that plaintiff Bradford posed an immediate threat of death or great bodily harm to him and/or any other officer at the scene.

3. Did the Defendant Officers deliberately and indifferently violate Plaintiff's Fifth, Eighth, and Fourteenth Amendment constitutional rights?

4. What are the extent of Plaintiff's injuries resulting from the gun shot wound that occurred on June 29, 2004?

5. Did the Defendant Officers follow the Modesto Plolice Department's protocol when they started firing at Plaintiff on June 29, 2004?

**D.  Disputed Evidentiary Issues**

1. Evidence or argument relating to any complaints made against any of the defendant officers for alleged misconduct in the performance of their duties on occasions other than the incident giving rise to this action.

2. Evidence or argument regarding the fact that the plaintiff was actually unarmed at the time of the shooting incident which gives rise to this action.

3. Evidence or argument regarding whether the two witnesses identified by the plaintiff in his pretrial statement had ever seen plaintiff in possession of a firearm.

**E.  Special Factual Information**

Pursuant to Local Rule 16-281(b)(6), the following special factual information pertains to this action:

1. Age: Plaintiff Michael Bradford is twenty-seven years of age, DOB 11/12/81.

2. Injuries Sustained: Plaintiff Michael Bradford sustained a single gunshot wound to the left

upper chest.  There is no claim of exacerbation of pre-existing injury.

3: Period of Hospitalization: Unknown.

4. Medical Expenses: The plaintiff has been in custody continuously since the incident giving rise to this action, and, as a result, all medical treatment which has been provided to him for the injuries which he sustained in that incident has been at government expense.

5. Period of total and/or partial disability: The plaintiff has provided no information in that regard for this pretrial statement.

6. Earnings prior to incident: The plaintiff has provided no information in that regard for this pretrial statement.

7. Earnings loss to date: The plaintiff has lost no earnings as a result of the incident giving rise to this action, since he has been incarcerated for the entire time, and will continue to be incarcerated for approximately the next 25 years.

**IV.  Relief Sought**

Plaintiff seeks an unspecified amount of general and punitive damages.

**V.  Points of Law**

All of Plaintiff's claims have been dismissed except for his claims that the use of force on his person by Officers Hart, D. Ramirez, and C. Ramirez was excessive and thus unlawful. Those claims fall within the ambit of the Fourth Amendment's "objective reasonableness" standard.

**VI.  Abandoned Issues**

There are no abandoned issues.


**VII.  Witnesses**

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(10).


**A.  Plaintiffs' Witnesses**

Rebecca Ingham
403 Downey Ave. #B
Modesto, CA 95254


Guadalupe Aluarez
1020 N. Olive Ave. #120
Turlock, CA 95380

**B.  Defendants' Witnesses**

Parole Agent Michael Brodie
California Department of Corrections
Parole and community Services
c/o Sacramento County Jail
12500 Bruceville Road
Elk Grove, California 95624

Lt. Ron Cloward
Modesto Police Department
600 Tenth Street
Modesto, California 95353

Sgt. Alex Bettis
Modesto Police Department
600 Tenth Street
Modesto, California 95353

Sgt. Scott Heller
Modesto Police Department

12

600 Tenth Street
Modesto, California 95353

Officer John Locke
Modesto Police Department
600 Tenth Street
Modesto, California 95353

Officer Michael Freudenthal
Modesto Police Department
600 Tenth Street
Modesto, California 95353

Officer Robert Hart
Modesto Police Department
600 Tenth Street
Modesto, California 95353

Officer Dave Ramirez
Modesto Police Department
600 Tenth Street
Modesto, California 95353

Officer Dale Lingerfelt
Modesto Police Department
600 Tenth Street
Modesto, California 95353

Officer Carlos Ramirez
Modesto Police Department
600 Tenth Street
Modesto, California 95353

Roberta Fisher
4440 Arbolada Drive
La Grange, California 95329

Dan Kaizer
1900 Fairfax Avenue
Modesto, California

Sheriff Adam Christianson
Stanislaus County Sheriff's Department
250 East Hackett Road
Modesto, California

Expert Witness Don Stuart Cameron
2336 Banbury Loop
Martinez, California 94533

## VIII.  Exhibits

13

The following is a list of documents or other exhibits that the parties expect to offer at trial.  NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(11).

**A.  Plaintiffs' Exhibits**

Answers to Interrogatories by R. Hart

Answers to Interrogatories by D. Ramirez

Answers to Interrogatories by C. Ramirez

Defendant's Motion for Summary Judgment

Affidavit by R. Hart

Affidavit by D. Ramirez

Affidavit by C. Ramirez


**B.  Defendants' Exhibits**

501. Copy of Modesto Police Department crime report dated 6/10/04, case no. 04-59992, reporting an armed robbery which occurred at Tropics Motel, 936 McHenry Avenue, Modesto, California on 6/9/04 at 11:54 p.m.

502. Copy of Modesto Police Department crime report dated 6/11/04, case no. 04-60358, reporting an armed robbery which occurred at Mr. T's Donuts, 3507 Tully Road, Modesto, California on 6/11/04 at 12:51 a.m.

503. Copy of Modesto Police Department crime report dated 6/16/04, case no. 04-62795, reporting an armed robbery which occurred at Pizza Hut Restaurant, 2001 McHenry Avenue, Modesto, California on 6/16/04 at 9:19 p.m.

504. Copy of Modesto Police Department crime report dated 6/18/04, case no. 04-63608, reporting an armed robbery which occurred at Video King, 801 Oakdale Road, Suite A-1,

Modesto, California on 6/18/04 at 10:15 p.m.

505. Copy of Modesto Police Department crime report dated 6/19/04, case no. 04-63668, reporting an armed robbery which occurred at 7-11 Store, 1045 Oakdale Road, Modesto, California on 6/19/04 at 2:30 a.m.

506. Copy of Riverbank Police Department crime report dated 6/21/04, case no. R04-5641, reporting an armed robbery which occurred at Blockbuster Video, 2210 Patterson Road, Riverbank, California on June 21, 2004, at 10:27 p.m.

507. Copy of Modesto Police Department crime report dated 6/24/04, case no. 04-65728, reporting an assault with a firearm which occurred at 301 Standiford, Modesto, California on 6/24/04 at 2:17 p.m.

508. A CD containing the recorded conversation of June 29, 2004 between Plaintiff Bradford and the informant.

509. A transcript of the conversation contained in Exhibit 508.

510. Aerial Photograph of the scene fo the shooting incident giving rise to this action and its surrounding area.

511. Diagram of the scene of the incident at 1836 Fairfax Avenue.

512. Photograph of 1704 Manzanita Drive, Modesto, California.

513. Photograph of rear yard of 1836 Fairfax Avenue.

514. Photograph of shed and southeast corner of house at 1836 Fairfax Avenue.

515. Photograph of gap between shed and southeast corner of house at 1836 Fairfax Avenue.

516. Photograph of east sideyard of 1836 Fairfax Avenue.

517. DVD of scene made after incident on the night of June 29, 2004.

518. Photograph of Sergeant Scott Heller taken following the incident on June 29, 2004.

519. Photograph of Officer Robert Hart taken following the incident on June 29, 2004.

520. Photograph of Officer David Ramirez taken following the incident on June 29, 2004.

521. Photograph of Officer Carlos Ramirez taken following the incident on June 29, 2004.

522. Photograph of Officer Mike Freudenthal taken following the incident on June 29, 2004.

523. Copy of letter written by plaintiff Michael Bradford to "Whom It May Concern" dated June 2, 2005.

524. Copy of the plea agreement in *United States v. Michael Joseph Bradford*. U.S.D.C. case number 1:04-5288 AWI.

## IX.  Discovery Documents To Be Used At Trial (Answers To Interrogatories And Responses To Requests For Admissions

None aside from those listed above.

## X.  Further Discovery or Motions

None requested.

## XI.  Stipulations

Defendants have offered to stipulate that at all times relevant to the instant action, Defendants Robert Hart, Dave Ramirez, and Carlos Ramirez were acting under color of state law.

## XII.  Amendments/Dismissals

There are no requested amendments to pleading, dismissals, additions or substitutions of parties, or dispositions as to defaulting parties of which the defendants are aware.

## XIII.  Settlement Negotiations

No settlement negotiations have taken place and neither party has stated that negotiations would be helpful.

**XIV.  Agreed Statement**

No party has stated that a presentation of some or all of the evidence by agreed statement is feasible or advisable.

**XV.  Separate Trial Of Issues**

No party requests a separate trial of issues.

**XVI.  Impartial Experts - Limitation Of Experts**

No party believes a court appointed expert is necessary.  Plaintiff challenges Defendants' expert witness as a motion in limine.

**XVII.  Attorneys' Fees**

As a pro se litigant, Plaintiff may not seek attorneys fees. See Kay v. Ehrler, 499 U.S. 432, 435 (1991).

**XVIII.  Further Trial Preparation**

**A.  Final Witness List**

The parties are ordered to file and serve their final list of witnesses by October 15, 2009. Additionally, at that time Plaintiffs shall disclose the order of witnesses so that Defendants will be prepared for cross-examination.

Except upon the showing set forth above in section VII, a party may not add witnesses to the final list of witnesses, or to any other updated witness list, who are not disclosed in this Order in Section VII.

**B.  Trial Briefs**

The parties may file and serve a Trial Brief by October 6, 2009.  Local Rule 16-285.  The

17

parties need not include in the Trial Brief any issue that is adequately addressed in a motion in limine, or in an opposition brief to a motion in limine.

### C.  Duty of Counsel to Pre-Mark Exhibits

The parties are ordered to confer no later than October 15, 2009 for purposes of pre-marking and examining each other's exhibits.  All joint exhibits must be pre-marked with numbers preceded by the designation JT/-- (e.g., JT/1, JT/2).  All of Plaintiffs' exhibits shall be pre-marked with numbers.  All of Defendants' exhibits shall be pre-marked with letters.

1.  Counsel shall create four (4) complete, legible sets of exhibits in binders as follows:

(a) Two sets of binders to be delivered to Courtroom Clerk Harold Nazaroff October 15, 2009, one for use by the Courtroom Clerk and the other for the court; and

(b)  One set for each counsel's own use.

If the parties desire, they may have a fifth set of binders to be used for the purposes of questioning witnesses.

2.  Counsel are to confer and make the following determination with respect to each proposed exhibit to be introduced into evidence, and to prepare separate indexes - one listing joint exhibits, and one listing each party's separate exhibits:

(a)  Duplicate exhibits, i.e., documents which both sides desire to introduce into evidence, shall be marked as a joint exhibit, and numbered as directed above.  Joint exhibits shall be listed on a separate index, and shall be admitted into evidence on the motion of any party, without further foundation.

(b)  As to exhibits that are not jointly offered, and to which there is no objection to introduction, those exhibits will likewise be appropriately marked, e.g., Plaintiffs' Exhibit 1 or Defendants' Exhibit A, and shall  be listed in the offering party's index in a column entitled "Admitted In Evidence."  Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

18

(c)  Those exhibits to which the only objection is a lack of foundation shall be marked appropriately, e.g., Plaintiffs' Exhibit 2 - For Identification, or Defendants' Exhibit B - For Identification, and indexed in a column entitled "Objection Foundation."

(d) Remaining exhibits as to which there are objections to admissibility not solely based on a lack of foundation shall likewise be marked appropriately, e.g., Plaintiffs' Exhibit 3 - For Identification or Defendants' Exhibit C - For Identification, and indexed in a third column entitled "Other Objection" on the offering party's index.

3.  Each separate index shall consist of the exhibit number or letter, a brief description of the exhibit, and the three columns outlined above, as demonstrated in the example below:

INDEX OF EXHIBITS

| EXHIBIT # | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
| --- | --- | --- | --- | --- |

Two sets of the completed joint index and the separate indexes shall be delivered to the Courtroom Clerk with the two sets of binders.

The court has no objection to counsel using copies.  However, the copies must be legible. If any document is offered into evidence that is partially illegible, the court may sua sponte exclude it from evidence.

**D.  Discovery Documents**

By October 15, 2009, each party shall file a list of all discovery documents the party intends to use at trial.  The list shall indicate whether each discovery document has previously been lodged with the Clerk.  If the discovery document has not been previously lodged, the party shall so lodge the document with the Courtroom Clerk by October 15, 2009.

**E.  Motions In Limine Hearing and Briefing Schedule**

The hearing for motions in limine will be held on October 20, 2009.  In addition to

19

addressing any filed motions in limine, at that time the court will also settle, to the extent possible, any other matter pertaining to the conduct of the trial.

Counsel are expected to be fully cognizant of the legal issues involved in the case by the date of the hearing for motions in limine.

By 4:00 p.m. on September 29, 2009, all motions in limine, with supporting points and authorities, shall be filed and served either personally or by facsimile upon opposing counsel.

By 4:00 p.m. on October 13, 2009, opposition to any motion in limine shall be filed and served either personally or by facsimile upon opposing counsel.  If a party does not oppose a motion in limine, that party shall file and serve in the same manner a Statement of Non-Opposition to that motion in limine.

### F.  Morning Conferences During Trial

During the trial, it is the obligation of counsel to meet with the court each morning to advise the court and opposing counsel as to what documents are proposed to be put into evidence that have not previously been admitted by stipulation, court order, or otherwise ruled upon.  The court will rule on those documents, to the extent possible, prior to the commencement of trial each day out of the presence of the jury.  If the ruling depends upon the receipt of testimony, the court will rule as requested upon the receipt of such testimony.

The court shall consider any other legal matter at morning conferences as well.  The court does not wish to recess the trial to hear legal argument outside of the presence of the jury, and proper preparation by counsel will eliminate the need for that result.

### G.  Order Of Witnesses

In order to make the trial operate efficiently and smoothly, each counsel has the continuing obligation to advise opposing counsel as to what witnesses he or she intends to call at each trial session.

## H.  Proposed Jury Instructions

The parties shall file and serve proposed jury instructions by October 15, 2009.   Counsel for Defendant must also provide Defendant's proposed jury instruction on a 3-1/2 inch computer disc, preferably formatted for WordPerfect 10, and e-mail them to:

*awiorders@caed.uscourts.gov.*

All proposed jury instructions shall be in duplicate.  One set shall indicate the party proposing the instruction, with each instruction numbered or lettered, shall cite supporting authority, and shall include the customary "Given, Given as Modified, or Refused," showing the court's action with regard to each instruction.  The other set shall be an exact copy of the first set, but shall be a "clean" copy that does not contain the identification of the offering party, instruction number or letter, supporting authority, or reference to the court's disposition of the proposed instruction.

## I.  Proposed Verdict Form

The parties shall file and serve a proposed verdict form by October 15, 2009.

## J.  Voir Dire

The parties may file and serve proposed voir dire questions, if any, by October 15, 2009.

Further, in order to aid the court in the proper voir dire examination of the prospective jurors, the parties should lodge with the court on the first morning of trial a list of all prospective witnesses, including rebuttal witnesses, that counsel reasonably expect to call.  The purpose of the lists is to advise the prospective jurors of possible witnesses to determine if a prospective juror is familiar with any potential witness.

## XIX.  Objections to Pretrial Order

Any party may, within ten (10) calendar days after the date of service of this order, file

and serve written objections to any of the provisions of this order.  Local Rule 16-283.  Such objection shall specify the requested corrections, additions or deletions.

## XX.  Rules of Conduct During Trial

### A.  General Rules

1. All participants in the trial shall conduct themselves in a civil manner.  There shall be no hostile interchanges between any of the participants.

2. All oral presentations shall be made from the podium, unless otherwise permitted by the court.

3. Sidebar conferences are discouraged.  Legal arguments or discussion of issues outside the presence of the jury should be done during recesses.

4. Counsel shall advise their respective clients and witnesses not to discuss any aspect of the case in the common areas of the courthouse accessible to the jurors, such as the lobby, the elevators, the hallways and the cafeteria.

### B.  Jury Selection

The court will conduct voir dire to be supplemented by any written questions submitted by counsel prior to trial and after the court has concluded its questioning of the jury panel.  In some circumstances, the court may allow brief direct questioning by counsel.

### C.  Opening Statements

Counsel may use visual aids in presenting the opening statement.  However, any proposed visual aids shall be shown to opposing counsel before opening statement.

### D.  Case in Chief

1. Counsel shall have his/her witnesses readily available to testify so that there are no

delays in the presentation of evidence to the trier of fact.

2.  At the close of each trial day, counsel shall disclose his/her anticipated witnesses and order of presentation for the next day, so that any scheduling or evidentiary issues may be raised at that time.

**E.  Witnesses**

1.  Before approaching a witness, counsel shall secure leave of court to approach the witness.

2.  Before approaching a witness with a writing, counsel shall first show the writing to opposing counsel.

**F.  Exhibits**

1.  All exhibits shall be marked and identified in accordance with the instructions in the Pretrial Order.

2.  An exhibit shall not be published to the jury until it has been admitted into evidence and counsel has secured leave of court to publish the exhibit.

3.  The court usually will conduct an on the record review of the exhibits that have been admitted in evidence at the conclusion of each party's case in chief and after each party has rested its entire case.

**G.  Objections**

1.  No speaking objections or arguments are permitted in the presence of the jury. Counsel shall state the specific legal ground(s) for the objection, and the court will rule based upon the ground(s) stated.  The court will permit counsel to argue the matter at the next recess.

2.  The court will not assume that any objection made also implies with it a motion to strike an answer that has been given.  Therefore, counsel who has made an objection, and who

also wishes to have an answer stricken, shall also specifically move to strike the answer.

**H.  Closing Argument**

Counsel may use visual aids in presenting the closing argument.  However, any proposed visual aids shall be shown to opposing counsel before closing argument.

FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS ACTION OR ENTRY OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER.

IT IS SO ORDERED.

**Dated:    October 5, 2009**                    **/s/ Anthony W. Ishii**
                                        CHIEF UNITED STATES DISTRICT JUDGE